is now in session. Good morning and welcome. My name is Bridget Beatty. I'm a circuit judge with my chambers in Phoenix, Arizona. I'm sitting today with Judge Richard Pius, who's a senior circuit judge with his chambers in Pasadena, California. And Judge Pius and I are very pleased today to be joined by Judge Hayward Gilliam, who is a district judge in the Northern District of California in San Francisco? Oakland. Oakland. He's in Oakland. Thank you. All right. This morning, our first case for argument is Massey v. Commissioner. And I see one counsel in person and one by video, so Ms. Young, whenever you're ready to proceed. Good morning, Your Honors. Mr. Lancammer. May it please the Court, I would like to reserve two minutes for rebuttal, but I'll just dive right in there. This is a Social Security case arising under Title II of the Social Security Act. This was filed in October of 15, approximately a year and a half before the Commissioner's new regulations came into effect. As such, this case should be adjudicated under the previous hierarchy of medical opinions. And that is a critical point in the case because in this case, we have three different psychological opinions, two by state agency consultants, one by a three of those sources indicated limits consistent with a limitation to simple routine tasks. They also presented additional limitations, and they did not all agree on what those additional limitations were. But all three sources agreed that this person did have severe mental health limitations and that she would be limited to simple routine tasks. We believe that because that portion of the opinion is uncontradicted, that it should be subject to the clear and But even if that standard does not apply, we believe that the judge's reasons, at least with respect to Dr. Harvey, do not rise to the level of specific and legitimate arguments for rejecting that opinion. So where did the ALJA err with respect to Dr. Harvey? So with respect to Dr. Harvey, the judge gave two reasons why he did not credit Dr. Harvey's opinion. And to be clear, the judge found that there was no severe mental health impairment at all, and that finding is likely dispositive in the case. It was found that she could do her past relevant work, which was above the unskilled level. But for that, she is limited to light work. She is over 55 at all material times, and therefore in the absence of transferable skills, she would be entitled to a finding of disability under the GRID rules. So the ALJA gave two reasons to reject Dr. Harvey's opinion. One reason was that she said something different to Dr. Harvey about why her previous work at a dispensary had ended than what she said at the hearing. The judge did not resolve that disagreement. He just observed that it was a different statement. We believe that's irrelevant because that wasn't the basis of Dr. Harvey's opinion. When he stated that she had had difficulty with detailed and complex tasks, he cited his own objective observations that she got Did she testify to any sort of mental distractions while she was working at the dispensary? Her testimony about the dispensary focused on her physical problems. I don't believe she mentioned one way or another whether she had mental problems with that job. She was focused on the physical at that time. So the second part of the ALJA's reasoning discounting Dr. Harvey's opinion related to Ms. Massey's ability to work as a housekeeper? That's correct, Your Honor. She did work part-time as a housekeeper after the job at the dispensary. We don't think that's inconsistent with Dr. Harvey's limitation, and certainly not inconsistent with the limitation to simple routine tasks. So Dr. Harvey had a few limitations, if I'm recalling this correctly. I think Dr. Harvey noted that Ms. Massey would have difficulty sustaining a work week or a full work day without interruptions, but then also noted that she would have difficulty with the usual stressors in the workplace, which would seem to be sort of a constant problem. Right. I believe he indicated that she would have difficulty working without special or additional supervision. Okay. And then the ALJA found that was inconsistent with her work history, that she indeed was working. That didn't seem to be consistent with what Dr. Harvey said. So how do you reconcile that limitation and then the work history? Well, in the first place, her work as a housekeeper was not full-time, and so that's not inconsistent with the idea that she would have difficulty maintaining a full-time schedule. Did she not testify that she often worked more than part-time, and that her problem with doing so was physical, not mental, not related to mental health issues? I believe that was her testimony, but I don't think that's dispositive. A person who has both physical and mental limitations may not necessarily have the insight to recognize what their mental limitations are if their physical limitations are also limiting them. Be that as it may, housekeeping work is Reasoning Level 1 according to the Dictionary of Occupational Titles, and that work is therefore entirely consistent with the limitation to set up a new class. Right, but Reasoning Levels are not linked to mental health diagnosis. I mean, Reasoning Levels are the ability to apply logic, reason, problem-solve, those sorts of things. So I'm not sure why an analysis of someone's mental acumen has anything to do with whether a mental health diagnosis would impact their ability to work. The reason it matters is because if you're saying that Dr. Harvey's opinion is not consistent with her work, then we have to look at whether her work shows an ability contrary to what Dr. Harvey indicated. This work does not require mental faculties that exceed what Dr. Harvey said she was limited to. But it did require... So a person limited... I'm sorry, go ahead. I'm sorry. I don't think Dr. Harvey said that. I don't think he said there's an issue with being unable to complete the work week because of psychiatric interruptions or not being able to handle the usual stressors of the workplace. I'm finding it difficult to connect that to the scale of mental reasoning ability. So Dr. Harvey did say those things. I'm focused on the fact that he also said she would have difficulty with detailed and complex tasks. That's a discrete limitation from his indication that she would have difficulty completing a normal work week or dealing with the usual stressors in the workplace. We would concede that the opinion that she would have difficulty with the usual stressors in the workplace is not echoed by the state agency consultants. That is contradicted. And those limitations may, in fact, have been reasonably rejected by the ALJ. But the limitation on... The limitation precluding detailed and complex tasks is uncontradicted and nothing the ALJ said gainsays that limitation. How did she describe the way in which she performed her housekeeping work? As I recall, Your Honor, she described it as starting from the back of the house and working her way to the front. And she also indicated that the customer would typically be present and keeping her on task. Right. But she never testified that her customers were actually present. I think what her testimony was there were two customers who provided accommodations to her, and she was talking about accommodations as physical tasks. It wasn't entirely clear to me from her testimony that she was saying her customers were actually present. I'm happy to dig up that citation while opposing counsel is arguing, and I can present it in rebuttal. But I believe she did say that. Now, what about the state agency mental health examiners? So the state agencies indicated a limitation to simple routine tasks. They said that expressly. There is a slight difference in that the state agency said she could do this much but no more, whereas the consultative examiner said she could not do this. But they drew the line at the same point. The state agency said that she was limited to simple routine tasks. So why is there error? Explain to me again your argument as to why the ALJ erred in discounting their testimony, their opinions. The ALJ said that it was not supported by objective medical evidence, but it was supported by the consultative examiner's opinion. And then the ALJ also indicated that hearing-level evidence, including the claimant's testimony, established that she worked, and I quote, numerous part-time jobs during the adjudicated period. But again, those part-time jobs, that housekeeping work, was not inconsistent with that limitation to simple routine tasks. I thought you also had a legal argument that the ALJ didn't give specific, point to specific evidence in the record under SUSA. Right. So SUSA requires that state agency opinions be rejected by reference to specific evidence in the medical record. With respect, we don't think that articulates a useful standard, because just citing to the record is obviously, I mean, if there was citation to a record that's actually contrary to the point the judge is making, that would still be citation to a record. That's obviously not enough. The underlying standard, of course, is substantial evidence under the U.S. Code. You have about a minute. Did you wish to reserve time? Right. I would like to reserve that. Thank you, Your Honor. Thank you. Mr. Lankhamer. Good morning, Your Honors. Good morning, Ms. Young. Joseph Lankhamer on behalf of the Commissioner. I'd like to start by addressing opposing counsel's argument this morning about how Dr. Harvey and the state agency doctors concluded that Massey could do simple, repetitive tasks, which according to Massey, aligned with her ability to do the housecleaning work because that under the DOT is simple work. Well, the vocational expert testimony in this case refutes that argument. If we look at page 56 of the administrative transcript, this is where the vocational expert is classifying Massey's past relevant work. About halfway down that page, the vocational expert references the housecleaner job that Massey testified about. I think it was with respect specifically to when Massey was working for an individual cleaning homes in 2017 and the DOT code that the vocational expert cites. If you look that DOT code up, the Dictionary of Occupational Titles 301.474-010, that contains a GED reasoning level of 3. As we know from this court's precedent in Zavalin, GED reasoning level 3 work is actually inconsistent with simple routine work. The vocational expert's testimony in this case, which is undisputed, actually refutes this argument that Massey is making that Dr. Harvey's opinion and the state agency doctor's opinion is consistent with her ability to do the housecleaning work. I do want to take, Judge Beatty, you pointed out some other aspects of Dr. Harvey's opinion with respect to how the LJ found that these were inconsistent with Massey's ability to work part-time. Recall that Dr. Harvey did not know that Massey would go back to work after he issued this opinion. Dr. Harvey issued this opinion in 2016, I think the summer of 2016, and Massey then went back to work afterwards and Judge Beatty, as you pointed out, she did not describe any problems from a mental standpoint performing that work. I thought there was some testimony or something somewhere in the record that she had trouble with some of the clients who came in to purchase product from the dispensary, and that she couldn't quite cope with, in particular, one customer who posed some difficulties with her, and she said it was just too much. She couldn't handle it. You're right, Judge Paez. That was with respect to the dispensary job that she worked at for a short period. I do believe you're correct that she said every once in a while there would be a customer that came in that was maybe giving her a hard time, and she said she had some problems there. That's understandable. If you have a difficult customer in any job, you could see how somebody might have problems dealing with a difficult customer. Especially somebody who has some psychological issues. She referenced that there were some difficult customers. I think that was the extent of her testimony. What she told the ALJ and what she told Dr. Kaufman was that she stopped working at that job because she had physical problems. She talked about arm numbness. She had to work at that reception area. She really did pin her problems and the reason she stopped working at that receptionist job on her physical problems. How do you respond to counsel's argument that Dr. Harvey also based his opinions in assessing her physically? He observed her and made notes about that, and counsel argued, well, this discrepancy just wasn't relevant to his ultimate opinion. I would respond by saying that the exam findings that Dr. Harvey recorded simply didn't match up with the more extreme conclusions that he reached. If we look at what Dr. Harvey actually observed during the exam, this is on page 302 of the record, he noted that I think she had a problem at one point subtracting sevens from a list. He noted that she described herself as anxious, but at the same time, she's got a normal memory exam. She's able to recall things. The concentration aspect, which would go to this idea that she was limited to simple routine tasks that he ultimately found, the concentration testing was normal. It says she performed a three-step command of taking a piece of paper in her left hand, folding it, and placing it on the table correctly. She was able to spell the word world both forwards and backwards. Her fund of knowledge is normal. The content of thought is normal. Stream of thoughts with some distractibility, as you pointed out, but there's a disconnect essentially between a lot of these normal exam findings and what she concludes. He's the professional. I wouldn't know how to assess a person if I had all these tests in front of me. He's the one that made the judgment call, right? He did offer an opinion. That's correct, Your Honor. That's what he was retained to do by the state. He was retained to perform a consultative exam. This wasn't her, Doctor. I think that suggests that the ALJ is required to just accept any examining physician, treating physician, retained state physician, any of their opinions. That's clearly not the case because the regulations detail all the things that the ALJ can consider in making the determination. Is there anything in the regulations or the procedure that prohibits the ALJ from discounting an examining physician's opinion in some respect, particularly if the ALJ thinks it isn't consistent with the records? Quite the contrary, Your Honor. You're exactly right. In Ford, in this court's decision, in Ford, this court stated that the ALJ is not required to accept a doctor's opinion at face value. The regulations require the ALJ to compare a doctor's opinion with the objective medical evidence to determine whether or not the opinion is supported, whether the consistency between a doctor's ultimate opinion and their exam findings does constitute a valid reason to reject the opinion. Recall that this case, Your Honors, it doesn't come down merely to the fact that the exam doesn't support the doctor's opinion. Keep in mind, Massey went back to work part-time after Dr. Harvey saw her. He didn't know that. He predicted that she would have some mental impairments if she tried to work, and yet, as of a year later, she is performing housekeeping work, describing no mental health difficulties with the housekeeping work. She's describing some physical limitations that she had, but these opinions about her needing special supervision, about her having problems dealing with usual work stress, she's going into people's homes. At one point, she becomes self-employed, and she's describing no mental health difficulties carrying out that work. In fact, she's testifying at the time of the hearing that she's still doing that work, and just days before, again, a note that Dr. Harvey did not see, just days before going to her administrative hearing, Massey goes to the hospital for a physical issue, and she describes having no anxiety. That's on page 316 of the record. Again, this is evidence that the ALJ had that Dr. Harvey did not, and Judge Beatty, as you pointed out, it is the ALJ's regulatory obligation to compare what a doctor says in the report with the overall record. When the ALJ did so here, he found discrepancies and therefore reasonably discounted that opinion. I know you're out of time, but I'd like you to address, just in the four seconds you have left, if it's possible, the ALJ's rejection of part of their testimony or opinions of the two non-examining mental health docs. Sure. I will be quick. The ALJ gave two reasons. Number one, that the doctor's opinions conflicted with her minimal treatment record. That's a valid reason under the regulations, 404-1527-C4 permits that. The ALJ again referred to the fact that Massey went back to work after these doctors issued their opinions, and again, did not describe mental health difficulties with the housecleaning work that she was doing at the time of the hearing. The SALSA case, I know that was touched upon during questioning with Ms. Young. The SALSA case is the governing case on the ALJ's analysis of these opinions. There is no heightened standard, unlike for examining and treating physicians. The court's case law routinely applies the SALSA case in these situations. Did that answer your question, Judge Pius? No, it's fine. I just wanted to hear your position. Okay. All right. Thank you. Thank you. Ms. Young, I think you only had about a minute left, but I'll give you two minutes if you would like. I'll attempt to move along. Thank you, Your Honor. I did find the testimony about her job, and I think you're at least partly correct that what she indicated was that the customers who were present there for her, I think it could be read that they were helping her out to make sure she didn't outdo herself physically, but they definitely were there helping her, On that same page, in that Certified Administrative Record, page 38, she describes the work. Basically, I go in and, you know, start at the furthest point from the front door at your exit point, wherever you're going to be, and to clean properly all walls, all showers, everything needs to be wiped down, all mirrors, windowsills. That's the total description of what she was doing. We think that's consistent with that reasoning level one housekeeper job that we described in the briefing. There's nothing there that's detailed or complex. It's just wiping down surfaces. She goes on to state that two of her customers are present while she's working, making sure she doesn't outdo herself, making sure she takes breaks. We believe that work is entirely consistent with the limitations that Dr. Harvey described, and that's a key point, because why would she cite mental limitations in that work when that work is consistent with her limitations? It doesn't exceed what Dr. Harvey said she was limited to. So, that work is part-time. It's with another person present who is keeping her from exceeding her capabilities, and it doesn't require mental faculties that she doesn't have. Although we have found that part-time work can be relevant in determining disability, right? That's the way that I read forward. Yes, it can be relevant if the work demonstrates a capacity that's in excess of the opinion evidence that's being rejected. That's the key point here. We don't believe this work is in any way contrary to Dr. Harvey's opinion. Thank you. Thank you, Your Honor. Counsel, thank you both for your arguments this morning.
judges: PAEZ, BADE, Gilliam